UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE #1, an individual, and JOHN DOE #2, an individual,<br><br>                      Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, an incorporated California Municipality; and DOES 1 to 10, inclusive<br><br>                      Defendants. | Case No.: 17-cv-01581-BTM-WVG<br><br>**ORDER DENYING DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**<br><br>**[ECF NOS. 10, 13-1]** |

      Defendant City of San Diego has filed a motion to dismiss Plaintiffs' Complaint. (ECF No. 10 ("MTD").) In response, Plaintiffs John Doe 1 and John Doe 2 filed an opposition, (ECF No. 13 ("Pls.' Opp'n")), along with a request for judicial notice in support of the opposition, (ECF No. 13-1 ("Pls.' RJN")). Defendant City of San Diego then filed a reply. (ECF No. 14 ("Def.s' Reply").) For the reasons discussed below, the Court **denies** Defendant's motion to dismiss and **grants in part and denies as moot in part** Plaintiffs' request for judicial notice.

1

# I. BACKGROUND

Plaintiffs John Doe 1 and John Doe 2 (collectively, "Plaintiffs") bring claims against Defendant City of San Diego ("Defendant" or "the City") under 42 U.S.C. § 1983, requesting declaratory and injunctive relief due to the allegation that a local city ordinance restricting the areas where registered sex offenders ("Registrant(s)") may reside is unconstitutional under federal and California state law. (ECF No. 1 ("Compl.").) The local law, entitled the "Child Protection Act," was adopted on April 13, 2008 by San Diego City Council and codified as San Diego Municipal Code, Chapter 5, Article 8, Division 6. *See* San Diego, Cal., Municipal Code § 58.0601-58.0607 (hereinafter "the Ordinance").

About a year and a half before the City of San Diego adopted the Ordinance, the California voters adopted Proposition 83, known as "The Sexual Predator Punishment and Control Act: Jessica's Law", which passed on November 7, 2006 and went into effect on November 8, 2006. Cal. Legis. Serv. Prop. 83 (West) (hereinafter "Jessica's Law"). Among other changes, Jessica's Law amended several sections of the California Penal Code, including Section 3003.5. *Id*; *see also* Cal. Penal Code § 3003.5. The newly amended law retained the original language of Section 3003.5, now codified under subsection (a), which restricts Registrants released on parole from residing with other Registrants in a single family dwelling. *See* Cal Penal Code § 3003.5(a). Two additional subsections were also added. Subsection (b) makes it unlawful "for any person for whom registration is required pursuant to [California Penal Code] Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather." *Id.* at § 3003.5(b). Subsection (c) provides that "nothing in this section shall prohibit municipal jurisdictions from enacting local ordinances that further restrict the residency of any person for whom registration is required pursuant to Section 290." *Id.* at § 3003.5(c).

The Ordinance mandates additional residency restrictions for Registrants in

the City of San Diego. The stated purpose of the Ordinance is "to reduce the risk of harm to children by impacting the ability of sex offenders to be in contact with children" and "to provide additional restrictions beyond those provided for in Proposition 83, Jessica's law (effective November 8, 2006) by adding locations to the residence restrictions imposed by Jessica's Law . . . ." Ordinance at § 58.0601.

The Ordinance provides three main regulations. First, the Ordinance makes it unlawful for Registrants to reside within 2000 feet of listed restricted areas. *Id.* at § 58.0603. The list includes "(a) Amusement center (b) Arcade (c) Child day care facility (d) Library (e) Playground (f) Park (g) School." *Id.* A separate section also provides brief definitions for each restricted area as well as definitions for other terms in the Ordinance like "[r]egistered sex offender." *See id.* at § 58.0602. Second, the Ordinance describes how to measure the 2000-foot buffer zone surrounding each restricted area. *Id.* at § 58.0604 ("The 2000-foot buffer zone is measured in a straight line, in all directions, without regard to intervening structures, from the property line of the places listed in section 58.0603 (a) through (g)."). Third, two additional sections regulate which Registrants are covered by the residency requirements with provisions specifying an effective date for the Ordinance as well as exemptions. *See id.* at §§ 58.0605-58.0606. The Ordinance only applies to a Registrant whose offense was committed on or after April 13, 2008. *Id.* at § 58.0606. The Ordinance also exempts a Registrant residing outside of the covered entities before April 13, 2008, even if one of the listed entities were to then move within 2000 feet of the Registrant after April 13, 2008. *Id.* at § 58.0605(b).

Since the passage of Jessica's Law in 2006, cases challenging the constitutionality of residency restrictions applying to Registrants have been litigated in state and federal courts. Of particular relevance here, the California Supreme Court in 2015 held the "blanket enforcement of the mandatory

residency restrictions of Jessica's Law, as applied to registered sex offenders on parole in San Diego County" to be unconstitutional because the law could not "survive even the more deferential rational basis standard of constitutional review." *In re Taylor*, 60 Cal. 4th 1019, 1038 (2015).

Plaintiffs John Doe 1 and John Doe 2 filed a complaint on August 7, 2017, challenging the Ordinance on state and federal constitutional grounds. (Compl. ¶¶ 1-3.) The Complaint alleges that both Plaintiffs are required to register as sex offenders under California Penal Code Section 290 for offenses committed after April 13, 2008. *Id.* at ¶¶ 6-7. Plaintiff John Doe 1 resides in the City of San Diego, and Plaintiff John Doe 2 resides in the County of San Diego. *Id.* Both intend to establish new lawful permanent residencies in the City of San Diego as well as temporary residencies in the City by spending nights in a hotel or inn or at the homes of friends and relatives. *Id.* Thus, Plaintiffs allege that they are subject to the Ordinance. *Id.*

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1)

Defendant City of San Diego challenges the Complaint, in part, on the ground that Plaintiffs lack Article III standing. Standing under Article III of the U.S. Constitution is an element of subject matter jurisdiction. Therefore, Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Generally, on a 12(b)(1) motion regarding subject matter jurisdiction, unlike a 12(b)(6) motion, a court need not defer to a plaintiff's factual allegations. But the Supreme Court has held that where a 12(b)(1) motion to dismiss is based on lack of standing, the Court must defer to the plaintiff's factual allegations and must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). "At the pleading stage, general

4

17-cv-01581-BTM-WVG

1 factual allegations of injury resulting from the defendant's conduct may suffice."
2 *Id.* at 560.  In short, a 12(b)(1) motion to dismiss for lack of standing can only
3 succeed if the plaintiff has failed to make "general factual allegations of injury
4 resulting from the defendant's conduct."  *Id.*

**B. Fed. R. Civ. P. 12(b)(6)**

Defendant also moves to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in the plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Although detailed factual allegations are not required, the factual allegations made "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

Defendant moves to dismiss the Complaint on the grounds that Plaintiffs lack Article III standing and Plaintiffs' claims fail to state a claim as required by Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, the Court holds that Plaintiffs have standing to maintain this action.  The Court then analyzes Plaintiffs' various claims to determine whether the claims should be dismissed under Rule 12(b)(6).

**A. Standing**

Defendant first argues that Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because

Plaintiffs lack Article III standing. Standing is a necessary element of federal court jurisdiction under Article III of the U.S. Constitution. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To have standing to sue in federal court, a plaintiff must meet the requirements set forth in the "Case or Controversy Clause" of Article III of the Constitution. U.S. Const. art. III, § 2. That is, a plaintiff must allege "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498–99. "[T]he plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations, internal quotation marks, and footnote omitted). A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1.

Defendant argues that Plaintiffs have failed to plead any injury because Plaintiffs do not contend either that they have attempted to purchase or rent a home within the City or that they have been prohibited from doing so because of the Ordinance. Moreover, Defendant argues that Plaintiffs do not have standing because they have not been threatened with prosecution or arrest by city law enforcement. Defendant points out that the Complaint fails to allege that any Registrant has been subjected to prosecution under the Ordinance. Defendant argues that consequently, Plaintiffs fail to allege that they face a credible threat of harm that is both real and immediate. The Court disagrees.

The Complaint alleges that Plaintiff John Doe 1 currently resides in the City of San Diego, Plaintiff John Doe 2 resides in the County of San Diego, and both Plaintiffs intend to acquire permanent residency in the City. (Compl. ¶¶ 6-7.) The Complaint further alleges that Plaintiffs are forbidden under the Ordinance from acquiring residency in the City due to the threat of criminal prosecution, including incarceration and/or significant fines. (Compl. ¶¶ 23-25.) Plaintiffs

plead that the Ordinance applies to Registrants who wish to spend even one night in the City. *Id.* These facts are sufficient to meet the pleading requirements for standing.

First, the standing requirements do not demand that Plaintiffs make an attempt to take up permanent residency in the City before they can challenge the Ordinance on constitutional grounds. The fact that they currently reside in, or in geographical proximity to, the City is sufficient when pled along with the allegations that both Plaintiffs intend to establish residency in the City. These facts adequately establish that the Plaintiffs have suffered an injury that is particularized and imminent because the Ordinance keeps Plaintiffs from moving to the City, where they would otherwise choose to live. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) (holding that a plaintiff had standing to challenge a local rezoning decision that prevented the development of low-cost housing where plaintiff testified he would "probably move" since it was closer to his job); *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000) (explaining that an individual can establish injury in fact in the context of environmental cases by showing a sufficient level of "connection to the area of concern" like "daily geographical proximity"); *Doe v. City of Arcadia*, No. CV15-5736-CAS(ASX), 2016 WL 738272, at *2, *3 (C.D. Cal. Feb. 22, 2016) (holding that plaintiff, who was required to register as a sex offender under California law, had standing to challenge local residency requirements even though he lived 185 miles from the covered city because he intended to travel and take up temporary residence there).

Second, contrary to Defendant's arguments, Plaintiffs do not need to risk liability under the Ordinance to achieve standing to bring a claim challenging its constitutionality. Moreover, Defendant's argument that the Complaint fails to allege any prior instance of prosecution under the Ordinance is not relevant. The Court finds Plaintiffs' citation to *Medimmune, Inc. v. Genentech, Inc.* to be on

7

point: The Supreme Court ruled in that case that

> where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

549 U.S. 118, 128-29 (2007) (emphasis in original). *See also Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("[I]t is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.") (citations omitted) (second and third modifications in the original). The *Medimmune* Court went on to cite several examples of cases where "the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do . . . " and yet subject-matter jurisdiction was not precluded "because the threat-eliminating behavior was effectively coerced." *Id.* at 129.

Thus, the Court holds that the Complaint adequately alleges facts to meet the requirements for standing because the Ordinance applies to Plaintiffs and effectively prevents them from doing what they claim they have a right to do—take up residency, both temporary and permanent, within the City.

**B. Sufficiency of Claims**

**1. Preemption**

Under the California Constitution, "a county or city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws." Cal. Const., art. 11, § 7. County and city law is preempted by state law "in the event of conflict between the regulations of state and local governments, or if the state legislation discloses an intent to preempt the field to the exclusion of local regulation." *Bishop v. City of San Jose*, 1 Cal. 3d 56, 62 (1969). Moreover, "'[w]here the Legislature has adopted statutes governing a

particular subject matter, its intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme.'" *People v. Nguyen*, 222 Cal. App. 4th 1168, 1179 (2014) (quoting *Am. Fin. Servs. Ass'n v. City of Oakland*, 34 Cal. 4th 1239, 1254 (2005), *review denied*, 2014 Cal. LEXIS 3030 (2014)).

Plaintiffs bring a state law preemption claim based on the theory that the Ordinance is preempted by California state law because California has a comprehensive scheme for the registration of sex offenders. Defendant moves to dismiss Plaintiffs' preemption claim because it argues that Proposition 83, or Jessica's Law, amended California Penal Code Section 3003.5 to create an exception that expressly allows municipalities to impose residency restrictions that further regulate where Registrants can reside. The City rests its argument on a textual interpretation of the amended statute, which states that "[n]othing in this section shall prohibit municipal jurisdictions from enacting local ordinances that further restrict the residency of *any person for whom registration is required* pursuant to Section 290." Cal. Penal Code § 3003.5(c) (emphasis added). The City asserts that Section 3003.5(c) extends to all Registrants based on the plain language of the statute. Plaintiffs, however, argue that Section 3003.5(c) is limited to covering parolees only, not all Registrants, and thus, Jessica's Law did not create an exception allowing localities to extend residency restrictions for all Registrants.

The California Court of Appeal held in *People v. Nguyen* that the California state legislature has enacted a comprehensive statutory scheme that fully occupies the field of "restrictions imposed on a sex offender's daily life to reduce the risk he or she will commit another similar offense." *Nguyen*, 222 Cal. App. 4th at 1179. The *Nguyen* Court went on to hold that consequently, a municipal ordinance that required sex offenders to obtain permission from local law

enforcement before entering parks and recreational areas was "impliedly" preempted by state law. *Id.* at 1188-89. Like the ordinance in *Nguyen*, the Ordinance at issue here also places restrictions on a sex offender's daily life that are intended to reduce the risk of recidivism. Therefore, under *Nguyen*, the Court finds that without an exception, state law impliedly preempts the City's residency restrictions codified in the Ordinance.

Defendant argues that Jessica's Law provides such an exception, because the text of Section 3003.5(c) allows municipalities to extend state residency restrictions to cover "any person for whom registration is required." Cal. Penal Code § 3003.5(c).

Plaintiffs state their preemption claim relying on the authority of *People v. Lynch*, 2 Cal. App. 5th 525 (2016). There, the California Court of Appeal defined the scope of "any person" in Section 3003.5(b), which states that "[n]otwithstanding any other provision of law, it is unlawful for *any person for whom registration is required* pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather." Cal. Penal Code § 3003.5(b) (emphasis added). Prior to *Lynch*, the California Supreme Court had previously ruled that subdivision (b) "obviously . . . appl[ies] to 'persons released on *parole.*'" *In re E.J.*, 47 Cal. 4th 1258, 1271 (2010) (emphasis in original) (quoting Cal. Penal Code § 3003.5(a)). The *Lynch* Court then limited the application of "any person" *only to* parolees for the period of their parole term. *Lynch*, 2 Cal. App. 5th at 528.

The California Court of Appeal based its interpretation on the following analysis. Jessica's Law amended an existing statute regulating sex offender registrants that was applicable only to parolees. *Id.* The newly amended law retained the original language of Section 3003.5, now codified as Section 3003.5(a), which limits its coverage to "a person [who] is released on parole after having served a term of imprisonment in state prison for any offense for which registration is required pursuant to Section 290," i.e, a parolee. *Id.* (quoting Cal.

Penal Code § 3003.5(a)). In adding subdivision (b), the drafters of Jessica's Law placed (b) immediately following (a). *Id.* The *Lynch* Court reasoned that this placement

> indicates the intent of [the] drafters to align and limit the "any person" reference in subdivision (b) to the class of persons identified in subdivision (a)—parolees. Therefore, the language of Section 3003.5 as a whole indicates the subdivision (b) residency restriction applies, as does subdivision (a), only to parolees for the period of their parole term.

*Id.* Plaintiffs argue that *Lynch* applies in limiting the scope of subdivision (c) to parolees as well, while Defendant requests that the Court decline extending the holding in *Lynch* to Section 3003.5(c).

To survive Defendant's motion to dismiss, the Complaint must present a "cognizable legal theory" in stating the state law preemption claim. *Balistreri*, 901 F.2d at 699. Under *Lynch*, the Complaint satisfies this requirement. Therefore, the Court denies Defendant's motion to dismiss with respect to the preemption claim. As to whether the Ordinance is preempted by state law, the Court declines to rule on this issue at the motion to dismiss stage. The Court presumes that this is a question better suited for disposition at the summary judgment stage, once the parties have had the opportunity to provide full briefing on the issue, including a comprehensive analysis of available case law as well as any legislative history.

### 2. Fourteenth Amendment Due Process

The Fourteenth Amendment Due Process Clause forbids the government from infringing upon "fundamental liberty interests in any manner unless the infringement is narrowly tailored to serve a compelling state interest [i.e., strict scrutiny]." *In re Taylor*, 60 Cal. 4th 1019, 1036 (2015) (internal quotations and omissions omitted) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). When bringing a facial constitutional challenge under the Due Process Clause where the requirements for strict scrutiny are not met, "all that is required is that a

11

17-cv-01581-BTM-WVG

reasonable relation to a legitimate state interest (i.e., a rational basis) be shown in order to justify the state action or find the challenged statute constitutional." *Id.* (internal quotations and citations omitted).

Plaintiffs challenge the Ordinance on the basis that it violates due process under the Fourteenth Amendment. Defendant concedes that as long as the Court rules that Plaintiffs have standing to bring their claims, a due process claim can survive if properly pled. Because the Court holds that Plaintiffs have met the standing requirements at the motion to dismiss stage, the Court goes on to determine whether Plaintiffs adequately allege a claim under the Due Process Clause of the Fourteenth Amendment.

Plaintiffs allege their due process claim in part by relying on the California Supreme Court's federal constitutional ruling in the case *In re Taylor*. In *Taylor*, San Diego County sex offender parolees brought habeas corpus petitions to challenge the constitutionality of the residency restrictions mandated in Jessica's Law. 60 Cal. 4th at 1023. Specifically, the parolees challenged California Penal Code Section 3003.5(b), which made it illegal for Registrants "'to reside within 2000 feet of any public or private school, or park where children regularly gather.'" *Id.* (quoting Cal. Penal Code § 3003.5(b)). Parolees alleged that the residency restrictions, as applied to them, were unconstitutional because under the Due Process Clause, the restrictions violated their fundamental rights "to intrastate travel, to establish and maintain a home, and to privacy and free association with others within one's home" and "effectively 'banishe[d]' them from establishing home or residing anywhere in the county [of San Diego]." *Id.* at 1036. The *Taylor* Court ruled in favor of the parolees, emphasizing the results of the evidentiary hearing at the trial court that found that the enforcement of Section 3003.5(b) barred the parolees from residing in large areas of San Diego County. *Id.* at 1039-40, 1042. Declining to decide whether rational basis or heightened strict scrutiny review should be used to analyze the parolees' claims,

the Court found the "blanket enforcement of the mandatory residency restrictions of Jessica's Law, as applied to registered sex offenders on parole in San Diego County" to be unconstitutional because the law could not "survive even the more deferential rational basis standard of constitutional review." *Id.* at 1038. The Court determined that the enforcement of the residency restrictions

> has imposed harsh and severe restrictions and disabilities on the affected parolees' liberty and privacy rights, however limited, while producing conditions that hamper, rather than foster, efforts to monitor, supervise, and rehabilitate these persons. Accordingly, it bears no rational relationship to advancing the state's legitimate goal of protecting children from sexual predators, and has infringed the affected parolees' basic constitutional right to be free of official action that is unreasonable, arbitrary, and oppressive.

*Id.*

Plaintiffs argue that they plead claims consistent with *Taylor* and also that their claims are against a regulation that is in fact more restrictive than the one at issue in *Taylor*. Plaintiffs point out that while the regulation in *Taylor* excluded Registrants from residing within 2000 feet of parks and schools, the City's Ordinance covers amusement centers, arcades, child day care facilities, libraries, and playgrounds, in addition to parks and schools. Moreover, as discussed above, the California Court of Appeal has limited the regulation at issue in *Taylor* to parolees, *Lynch*, 2 Cal. App. 5th at 528, while the City's Ordinance applies to all Registrants. The Court agrees that the Ordinance that Plaintiffs' challenge is even more restrictive than the regulation in *Taylor* and thus likely unconstitutional under the Due Process Clause.

Defendant argues that to challenge the constitutionality of the Ordinance under the Due Process Clause, Plaintiffs should be required to set forth their post-conviction status. The Court disagrees. The status that is relevant under the Ordinance is whether Plaintiffs are required to register as sex offenders under California Penal Code Section 290. Plaintiffs allege as much in the

Complaint. (Compl. ¶¶ 6-7.) Moreover, Defendant even concedes that "whether plaintiffs are parolees, probationers, or ex-offenders is of little consequence given the liberty impact of PC § 290 registration." (Def.s' Reply, 8.)

Defendant also requests that Plaintiffs set forth any attempts they have made to secure housing in the City. In *Taylor*, however, the California Supreme Court did not rest its holding on the nature of any attempts that the parolees may or may not have made to find homes in San Diego County. Rather, it was sufficient for the Court to strike down the regulation in *Taylor* as unconstitutional because it "prevented paroled sex offenders as a class from residing in large areas of [San Diego] [county], including most of the downtown area in the City of San Diego." *Taylor*, 60 Cal. 4th at 1041. Thus, Plaintiffs are not required to plead any attempts to secure housing in the City in order for the Complaint to survive Defendant's motion to dismiss.

Thus, because the Complaint adequately challenges the constitutionality of the Ordinance under the Due Process Clause, the Court denies Defendant's motion to dismiss with respect to Plaintiffs' Due Process claim.

### 3. Fourteenth Amendment Equal Protection

The Fourteenth Amendment Equal Protection Clause mandates that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

Plaintiffs challenge the Ordinance as unconstitutional under the Equal Protection Clause because based on the date it went into effect, it distinguishes between similarly situated Registrants. The Ordinance only applies to a Registrant whose offense was committed on or after April 13, 2008. Ordinance at § 58.0606. The Ordinance also exempts a Registrant residing outside of the covered entities before April 13, 2008, even if one of the listed entities were to

then move within 2000 feet of the Registrant after April 13, 2008. Ordinance at § 58.0605(b). Plaintiffs argue that because the Ordinance creates distinctions among Registrants that are not even rationally related to public safety, the Ordinance violates the Equal Protection Clause.

Defendant generally puts forth the premise that a prospective-only change in the regulation of certain groups does not violate the Equal Protection Clause. Defendant cites *People v. Floyd*, 31 Cal. 4th 179 (2003) as authority. Defendant's position may be correct in certain contexts, but it is not a complete statement of the law. The *Floyd* Court based its holding on the proposition that it is not "unconstitutional for the legislature to specify a classification between groups differently situated, *so long as a reasonable basis for the distinction exists*." *Floyd*, 31 Cal. 4th at 189-90 (emphasis added). In *Floyd*, the California Supreme Court found that applying a regulation only to convictions that occurred after the date the regulation went into effect was constitutional because the Court found a "reasonable basis" for the distinctions the regulation generated. *Id.* at 190.

Defendant, however, does not provide any reasonable basis for the distinctions created by the City Ordinance. Thus, the Defendant fails to challenge the plausibility of the claim in the Complaint that the Ordinance is unconstitutional under the Equal Protection Clause. As a result, the Court denies Defendant's motion to dismiss with respect to Plaintiffs' Equal Protection claim.

### 4. Void for Vagueness

Under the Due Process Clause, "'a penal statute [must] define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 561 U.S. 358, 402-03 (2010) (alteration in original) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). "The void-for-vagueness doctrine embraces these requirements," *id.* at

403, thus addressing concerns about "fair notice" and "arbitrary and discriminatory prosecutions," *id.* at 412.

Plaintiffs challenge the Ordinance on vagueness grounds. Defendant argues that the terms in the Ordinance are sufficiently clear so that a person of ordinary intelligence would understand which places in the City are prohibited and how far the boundaries of exclusion surrounding those places extend. The Court, however, finds that the Complaint sufficiently alleges a cognizable void-for-vagueness claim.

### a. Restricted Areas

Section 58.0603 of the Ordinance states that "[it] is unlawful for any registered sex offender to reside within 2000 feet of any of the follow places: (a) Amusement center (b) Arcade (c) Child day care facility (d) Library (e) Playground (f) Park (g) School." Plaintiffs allege that the definitions of these terms are open-ended and lack publication of the facilities that are covered. The definition of "amusement center," for example, includes "any establishment open to the public who provides entertainment directed at minors, or whose play equipment is primarily used by minors." Ordinance at § 58.0602. Plaintiffs assert that a person of ordinary intelligence cannot be expected to know necessarily what kind of entertainment is "directed at minors" or what sort of play equipment is "primarily used by minors." Plaintiffs allege that the insufficient definitions of the terms in Section 58.0603 "prevent Registrants from knowing the precise identity and size of the facilities that meet these definitions . . . ." (Compl. ¶ 47.) Plaintiffs claim that these ambiguities prevent an ordinary person from being able to comply with the Ordinance and risk arbitrary enforcement. Drawing all inferences in Plaintiffs' favor, the Court finds it plausible that the Ordinance does not give fair notice as to what compliance requires and exposes Registrants to arbitrary and discriminatory prosecutions.

Defendant asserts that the "terms and phrases used in the Ordinance have

routinely been upheld by California courts." (Def.s' Reply, 10.) The Court does not find Defendants' analysis to be persuasive.

First, Defendant argues that this Court in *Fantasyland Video, Inc. v. County of San Diego* cited an opinion with approval from the Florida District Court of Appeal for the proposition that "a parole condition forbidding those convicted of sexual crimes against children from working, volunteering, or living near any 'school, daycare center, park, playground, or other place where children regularly congregate' was 'sufficiently precise' and not unconstitutionally vague." 373 F. Sup. 2d 1094, 1126 (S.D. Cal. 2005) (quoting *Britt v. State of Florida*, 775 So. 2d 415, 416-17 (Fla. Dist. Ct. App. 2001)). However, the question in *Britt v. State of Florida* was not whether the specific terms—school, daycare center, park, playground—were sufficiently precise. Rather, the Florida state court was asked whether the phrase "*or other place where children regularly congregate*" was void for vagueness. *Britt*, 775 So. 2d at 416-17 (emphasis added). Likewise, this Court in *Fantasyland Video* did not cite *Britt* because it informed a constitutional vagueness challenge to the terms school, daycare center, park, or playground. The question in *Fantasyland Video* was whether the word "regularly" in the context of an adult entertainment regulation including the phrase "regularly appears in a state of semi-nudity" was impermissibly vague. 373 F. Sup. 2d at 1125-26. Thus, Defendant's reliance on *Fantasyland Video* is misplaced.

Second, Defendant cites *People v. Trantham* for the proposition that the word "park" is not unconstitutionally vague. The question in *Trantham*, however, was not about the term "park" in and of itself. *Trantham* addressed whether a late night park closure regulation was void for vagueness. 161 Cal. App. 3d Supp. 1, 6 (1984). Specifically the Court analyzed the regulation in question for its "proscription against any person entering, remaining, staying, or loitering in a public park between the hours of 10:30 p.m. and 5 a.m." *Id.* Consequently, Defendant's reliance on *Trantham* for the proposition that a California court found

17

that the word "park" is not unconstitutionally vague is misplaced.

Based only on its citations to *Fantasyland Video* and *Trantham*, Defendant then contends that "[g]iven that the very words, on their own, that are used in the ordinance have been upheld, plaintiffs' [void for vagueness] claim fails." (Def.s' Reply, 10.) However, as discussed above, these two cases do not address whether the language of the Ordinance is void for vagueness and are not relevant to Plaintiffs' claim.

### b. Measure of Distance

Section 58.0604 of the Ordinance states that "[t]he 2000-foot buffer zone is measured in a straight line, in all directions, without regard to intervening structures, from the property line of the places listed in section 58.0603 (a) through (g)." Ordinance at § 58.0604. This language, in and of itself, is sufficiently clear. However, Plaintiffs claim that the Ordinance is void for vagueness because it is unclear whether the measure of distance designating the restricted areas includes "parking lots, storage spaces, and other structures that do not typically shelter or contain people." The Court holds that this allegation supports a plausible vagueness challenge because without clarity on what exactly constitutes a given restricted area, Registrants are not able to determine the 2000-foot buffer zone. Without sufficient definiteness as to what is included in "the places listed in section 58.0603 (a) through (g)" it is unclear how to measure the buffer zone.

Defendant argues that the language is sufficiently precise and provides example of similar language in other California statutes. Defendant is correct that boundary limitations exist throughout California laws. But Plaintiffs do not argue that the buffer zone created by the Ordinance is vague merely because it is a boundary limitation. The Complaint asserts that the measure of distance that Registrants and law enforcement are expected to calculate is impermissibly vague because within the context of the Ordinance, it is difficult to ascertain the

18

17-cv-01581-BTM-WVG

property lines of the covered facilities.

Thus, because the Court finds that Plaintiffs' allegations sufficiently set forth a cognizable legal theory challenging the Ordinance on vagueness grounds, Defendant's motion to dismiss is denied as to the void for vagueness claim.

### 5. Declaratory Relief

The Declaratory Judgment Act "does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). Because Plaintiffs have adequately pled violations of substantive rights in their first, second, and third claims, the Court denies Defendant's motion to dismiss with respect to Plaintiffs' claim for declaratory relief.

## IV. PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

Plaintiffs have submitted a request for judicial notice in support of their opposition to the motion to dismiss. (See Pls.' RJN.) As to the cases submitted, the Court takes judicial notice and grants Pls.'s RJN in part. As to all other materials submitted, the Court did not consider or rely on them and therefore denies Pls.' RJN as moot in part at the motion to dismiss stage of the proceedings.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court **denies** Defendant's motion to dismiss, (ECF No. 10), and **grants in part and denies as moot in part** Plaintiffs' request for judicial notice, (ECF No. 13-1).

IT IS SO ORDERED.

Dated: January 29, 2019

_____
Honorable Barry Ted Moskowitz
United States District Court